**MADE JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| _____<br>FEDERAL TRADE COMMISSION,<br>Plaintiff<br>v.<br>BURNLOUNGE, INC., et al.,<br>Defendants.<br>_____ | Case No. **CV 07-3654 GW FMOx**<br><br>**FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS BURNLOUNGE, INC., JUAN ALEXANDER ARNOLD, JOHN TAYLOR AND ROB DEBOER** |

On June 6, 2007, the Plaintiff, Federal Trade Commission ("FTC" or "Commission") filed a Complaint for Injunctive and Other Equitable Relief against BurnLounge, Inc., Juan Alexander Arnold, John Taylor, Rob DeBoer and Scott Elliot pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), alleging that they had engaged in deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). A settlement was agreed upon between the Commission and Defendant Scott Elliot, and the Court entered a stipulated final order for permanent injunction and other equitable relief against him (Docket No. 248) on June 16, 2008.

As to the remaining defendants, the matter proceeded to a nine-day bench trial between December 9, 2008 and December 22, 2008. On March 30, 2009, the Court held a hearing to allow the parties to present closing arguments. On July 1,

2011, the Court issued a Statement of Decision (Docket No. 431) finding by a preponderance of evidence that BurnLounge, Inc., Juan Alexander Arnold, John Taylor, and Rob DeBoer had violated Section 5 of the FTC Act, and that permanent injunctive and equitable monetary relief was warranted pursuant to 15 U.S.C. §§ 45 and 53. The Court directed Plaintiff to resubmit an amended proposed order conforming to the Court's Statement of Decision.

Based on the record established in this matter and for reasons set forth in the Court's Statement of Decision, it is hereby **ORDERED, ADJUDGED AND DECREED:**

## DEFINITIONS

For purposes of this Final Judgment and Order for Permanent Injunction and Other Equitable Relief (hereinafter "Final Order"), the following definitions shall apply:

1. "Business opportunity" means:
   (a) A commercial arrangement in which the seller solicits a prospective purchaser to enter into a new business;
   (b) The prospective purchaser makes a required payment; and
   (c) The seller, expressly or by implication, orally or in writing, represents that the seller or one or more designated persons will:
      (i) Provide locations for the use or operation of equipment, displays, vending machines, or similar devices, owned, leased, controlled or paid for by the purchaser;
      (ii) Provide outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the purchaser's goods or services; or
      (iii) Buy back any or all of the goods or services that the purchaser makes, produces, fabricates, grows, breeds,

|   |     | modifies, or provides, including but not limited to providing payment for such services as, for example, stuffing envelopes from the purchaser's home. |
|---|-----|---|
| 2. | | "Business Venture" means any written or oral business arrangement, however denominated, that is a business opportunity, franchise, or that consists of the payment of any consideration in exchange for: (a) the right or means to offer, sell, or distribute goods or services (regardless of whether identified by a trademark, service mark, trade name, advertising or other commercial symbol); and (b) more than nominal assistance to any person or entity in connection with or incident to the establishment, maintenance, or operation of a new business, or the entry by an existing business into a new line or type of business. |
| 3. | | "Consumer" means an actual or potential purchaser, customer, subscriber, or natural person. |
| 4. | | "Defendant BurnLounge" means Defendant BurnLounge, Inc., and its successors and assigns. |
| 5. | | "Defendant Arnold" means Defendant Juan Alexander Arnold. |
| 6. | | "Defendant Taylor" means Defendant John Taylor, whose legal name is John Marcus Taylor. |
| 7. | | "Defendant DeBoer" means Defendant Rob DeBoer, whose legal name is Robert Edwards DeBoer. |
| 8. | | "Defendants" means Defendants BurnLounge, Inc., Juan Alexander Arnold, John Taylor and Rob DeBoer. |
| 9. | | "Individual Defendants" means Defendants Arnold, Taylor and DeBoer. |
| 10. | | The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and |

video recordings, electronically stored information, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

11. "Franchise" means any continuing commercial relationship or arrangement, whatever it may be called, in which the terms of the offer or contract specify, or the franchise seller promises or represents, orally or in writing, that: (a) the franchisee will obtain the right to operate a business that is identified or associated with the franchisor's trademark, or to offer, sell, or distribute goods, services, or commodities that are identified or associated with the franchisor's trademark; (b) the franchisor will exert or has authority to exert a significant degree of control over the franchisee's method of operation, or provide significant assistance in the franchisee's method or operation; and (c) as a condition of obtaining or commencing operation of the franchise, the franchisee makes a required payment or commits to make a required payment to the franchisor or its affiliate.

12. "Franchisee" means any person who is granted a franchise.

13. "Franchise seller" means a person that offers for sale, sells, or arranges for the sale of a franchise.

14. "Franchisor" means any person who grants a franchise and participates in the franchise relationship.

15. "Material fact" means any fact likely to affect a person's choice of, or conduct regarding, goods, services, or business ventures.

16. "Multi-level Marketing Program" means any marketing program in which participants pay money to the program promoter in return for which the participants obtain the right to: (a) recruit additional

participants, or have additional participants placed by the promoter or any other person into the program participant's downline, tree, cooperative, income center, or other similar program grouping; (b) sell goods or services; and (c) receive payment or other compensation, in whole or in part, based upon the sales of those in the participants downline, tree, cooperative, income center or similar program grouping.

17. "New business" means a business in which the prospective purchaser is not currently engaged, or a new line or type of business.

18. "Participating in any prohibited marketing scheme" includes, but is not limited to, promoting, marketing, advertising, offering for sale, or selling, or assisting others in the offering for sale or selling the right to participate in, the prohibited marketing scheme, as well as acting or serving as an officer, director, employee, salesperson, agent, shareholder, advisor, consultant, independent contractor, or distributor, or acting as a speaker or spokesperson on behalf of, any prohibited marketing scheme.

19. "Prohibited Marketing Scheme" means a pyramid sales scheme, Ponzi scheme, chain marketing scheme, or other marketing plan or program in which participants pay money or valuable consideration in return for which they obtain the right to receive rewards for recruiting other participants into the program, and those rewards are unrelated to the sale of products or services to ultimate users. For purposes of this definition, "sale of products or services to ultimate users" does not include sales to other participants or recruits or to the participants' own accounts.

20. "Trademark" means trademarks, service marks, names, logos, and other commercial symbols.

# ORDER

## I.  Prohibited Marketing Schemes

IT IS THEREFORE ORDERED that each Defendant and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Final Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device, are permanently restrained and enjoined from engaging, participating, or assisting in any manner or capacity whatsoever, in any Prohibited Marketing Scheme.

## II.  Prohibited Representations

IT IS FURTHER ORDERED that, in connection with the advertising, promotion, offering for sale, or sale, or assisting others in the advertising, promotion, offering for sale, or sale of any Multi-level Marketing Program or Business Venture, each Defendant and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Final Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device, are permanently restrained and enjoined from making, expressly or by implication, orally or in writing, any false or misleading statement or misrepresentation of material fact including, but not limited to, the following:

A.   Misrepresentations about the amount of sales, income, or profits that a participant in such Multi-level Marketing Program or Business Venture can reasonably expect to achieve;

B.   Misrepresentations about the amount of sales, income, or profits that a participant or participants in such Multi-level Marketing Program or Business Venture have actually achieved;

C.   Misrepresentations about the profitability of participating in such Multi-level Marketing Program or Business Venture

D. Misrepresentations that a person who participates in such Multi-level Marketing Program or Business Venture can reasonably expect to recoup his or her investment;

E. Misrepresentations of any reward offered to or earned by participants in such Multi-level Marketing Program or Business Venture;

F. Misrepresentations of the legality of such Multi-level Marketing Program or Business Venture; and

G. Misrepresentations of any material aspect of the performance, efficacy, nature, or central characteristic of any good or service offered for sale through such Multi-level Marketing Program or Business Venture.

### III. Prohibition Against Material Omissions

IT IS FURTHER ORDERED that, in connection with the advertising, promotion, offering for sale, or sale, or assisting others in the advertising, promotion, offering for sale, or sale of any Multi-level Marketing Program or Business Venture, each Defendant and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Final Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device, are hereby permanently restrained and enjoined from failing to disclose, clearly and conspicuously, to any participant or prospective participant in any Multi-level Marketing Program or Business Venture to whom any earnings, profits or sales volume claims have been made:

A. The number and percentage of participants in the Multi-level Marketing Program or Business Venture who have earned, profited or sold at least the amount represented; and

B. The number and percentage of participants in the Multi-level Marketing Program or Business Venture who have made a profit through their participation in the Multi-level Marketing Program or Business Venture.

**IV. Equitable Monetary Relief**

IT IS FURTHER ORDERED that:

A. Judgment is hereby entered in favor of the Commission and against Defendants BurnLounge and Arnold, jointly and severally, in the amount of sixteen million two hundred forty-five thousand seven hundred ninety-nine dollars and seventy cents ($16,245,799.70), to be utilized to directly reimburse consumers who were injured by the BurnLounge pyramid scheme, except as provided for in Section V.A. The judgment shall be paid to the Commission within ten (10) days of entry of this Final Order. Full payment of this sum shall fully satisfy all monetary claims asserted by the Commission against Defendants BurnLounge and Arnold in this matter. Within ten (10) days of entry of this Final Order, in partial satisfaction of the judgment, Defendants Arnold and BurnLounge shall do the following:

 1. Defendant Arnold shall transfer to the Commission his interest in 1430 N. Cahuega Partners, LP, and all rights and title to that interest; and

 2. Defendant BurnLounge shall:

  a. Transfer to the Commission its membership interest in Beatport LLC, and all rights and title to that membership interest; and

  b. Transfer to the Commission all funds owned by BurnLounge or held on its behalf in banks or financial institutions, or otherwise. These funds shall include, but not be limited to, the $72,076.68 and $50,267.00 and any interest earned thereon, that Defendant BurnLounge was ordered to preserve, pursuant to the Court's Order of August 4, 2008 [Docket No. 268].

B. Judgment is hereby entered in favor of the Commission and against

Defendant DeBoer in the amount of one hundred fifty thousand dollars ($150,000.00) as disgorgement. Defendant DeBoer shall disgorge that amount to the Commission within ten (10) days of entry of this Final Order. Full payment of this sum shall fully satisfy all monetary claims asserted by the Commission against Defendant DeBoer in this matter.

    C.    Judgment is hereby entered in favor of the Commission and against Defendant Taylor, in the amount of six hundred twenty thousand one hundred thirty-nine dollars and sixty-four cents ($620,139.64) as disgorgement. Defendant Taylor shall disgorge that amount to the Commission within ten (10) days of entry of this Final Order. Full payment of this sum shall fully satisfy all monetary claims asserted by the Commission against Defendant Taylor in this matter.

    D.    The judgments entered pursuant to this Section are equitable monetary relief, and are not fines, penalties, punitive assessments or forfeitures.

    E.    Defendants shall relinquish all dominion, control, and title to the funds or assets paid or transferred pursuant to this Final Order to the fullest extent permitted by law.

    F.    Pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish consumer reports concerning the Individual Defendants to the FTC, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## V. Administration of Funds Collected

IT IS FURTHER ORDER THAT:

    A.    Any and all funds collected by Plaintiff pursuant to this Final Order, shall be deposited into a fund administered by the Commission or its agent to be used for consumer redress and any attendant expenses for the administration of any redress fund. Defendants shall have no right to contest the manner of distribution chosen by the Commission. The Commission in its sole discretion may use a designated agent to administer consumer redress. If the Commission determines in

its sole discretion that redress to purchasers is wholly or partially impracticable, or any funds collected from Defendants remain after the redress process is completed, then any funds not used for redress or expenses attendant to the redress fund shall be deposited in the United States Treasury as disgorgement.

B. Defendants shall cooperate fully to assist the Commission in identifying consumers who may be entitled to redress pursuant to this Final Order. The cooperation shall include, but not be limited to, providing Plaintiff a list of each consumer who purchased a VIP, Exclusive or Basic package, and at any time was a BurnLounge Mogul. As to each such consumer, Defendants shall provide consumer contact information including the consumer's name, member and retailer identification numbers, address, telephone numbers and e-mail addresses. This consumer contact information shall be provided to Plaintiff within twenty (20) days of entry of this Final Order in the form of a searchable electronic document formatted in Microsoft Excel [.xls or .xlsx] or Microsoft Access [.mdb or .mdbx], and supplied on CD-R CD ROM optical disks formatted to ISO 9660 specifications, DVD-ROM optical disks for Windows-compatible personal computers, or USB 2.0 flash drives, or in such other electronic form as may be agreed to in writing by Plaintiff.

## VI.  Compliance Monitoring

IT IS FURTHER ORDERED that, for the purpose of monitoring and investigating compliance with any provision of this Final Order:

A. Within ten (10) days of receipt of written notice from a representative of the Commission, Defendants each shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in each Defendant's possession or direct or indirect control to inspect the business operation;

B. In addition, the Commission is authorized to use all other lawful

means, including but not limited to:

    1. Obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

    2. Posing as consumers and suppliers to Defendants, their employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice; and

C. Defendants shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Final Order. The person interviewed may have counsel present.

*Provided however,* that nothing in this Final Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1))

## VII. Compliance Reporting

IT IS FURTHER ORDERED that, in order that compliance with the provisions of this Final Order may be monitored:

A. For a period of five (5) years from the date of entry of this Final Order,

    1. Each Individual Defendant shall notify the Commission of the following:

        a. Any changes in such Defendant's residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

  b. Any changes in such Defendant's employment status (including self-employment), and any change in such Defendant's ownership in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that such Defendant is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of such Defendant's duties and responsibilities in connection with the business or employment; and

  c. Any changes in such Defendant's name or use of any aliases or fictitious names;

2. Defendant BurnLounge shall notify the Commission of any changes in structure of Defendant BurnLounge or any business entity that Defendant BurnLounge directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Final Order, including but not limited to: incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Final Order; or a change in the business name or address, at least thirty (30) days prior to such change, provided that, with respect to any proposed change in the business entity about which Defendant BurnLounge learns less than thirty (30) days prior to the date such action is to take place, Defendant BurnLounge shall notify the Commission as soon as is practicable after obtaining such knowledge.

B. One hundred eighty (180) days after the date of entry of this Final Order and annually thereafter for a period of five (5) years, Defendants each shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Final Order. This report shall include, but not be limited to:

    1. For each Individual Defendant:

        a. Such Defendant's then-current residence address, mailing addresses, and telephone numbers;

        b. Such Defendant's then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that such Defendant is affiliated with, employed by, or performs services for; a detailed description of the nature of the business; and a detailed description of such Defendant's duties and responsibilities in connection with the business or employment; and

        c. Any other changes required to be reported under Subsection A of this Section.

    2. For all Defendants:

        a. A copy of each acknowledgment of receipt of this Final Order, obtained pursuant to the Section titled "Distribution of Order";

        b. Any other changes required to be reported under Subsection A of this Section.

C. Each Defendant shall notify the Commission of the filing of a bankruptcy petition by such Defendant within fifteen (15) days of filing.

D. For the purposes of this Final Order, Defendants shall, unless

otherwise directed by the Commission's authorized representatives, send by overnight courier all reports and notifications required by this Final Order to the Commission, to the following address:

> Associate Director for Enforcement
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W., Room NJ-2122
> Washington, D.C. 20580
> RE: FTC v. BurnLounge, Inc.

Provided that, in lieu of overnight courier, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Commission at: DEBrief@ftc.gov.

E.   For purposes of the compliance reporting and monitoring required by this Final Order, the Commission is authorized to communicate directly with each Defendant.

## VIII.  Record Keeping Provisions

IT IS FURTHER ORDERED that, for a period of eight (8) years from the date of entry of this Final Order, Defendants, in connection with advertising, offering, marketing, promotion or sale of any multi-level marketing program or business venture and their agents, employees, officers, corporations, and those persons in active concert or participation with them who receive actual notice of this Final Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.   Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.   Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C. Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D. Complaints and refund requests (whether received directly, indirectly, or through any third party) and any responses to those complaints or requests;

E. Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F. All records and documents necessary to demonstrate full compliance with each provision of this Final Order, including but not limited to, copies of acknowledgments of receipt of this Final Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## IX. Distribution of Order

IT IS FURTHER ORDERED that, for a period of five (5) years from the date of entry of this Final Order, Defendants shall deliver copies of the Final Order as directed below:

A. Defendant BurnLounge must deliver a copy of this Final Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Final Order; and (3) any business entity resulting from any change in structure set forth in Subsection A of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Final Order upon Defendant BurnLounge. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subsection A of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

B. Individual Defendant as Control Person: For any business that an

Individual Defendant controls, directly or indirectly, or in which such Defendant has a majority ownership interest, such Defendant must deliver a copy of this Final Order to (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Final Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Final Order upon such Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

C. Individual Defendant as employee or non-control person: For any business where an Individual Defendant is not a controlling person of a business but otherwise engages in conduct related to the subject matter of this Final Order, such Defendant must deliver a copy of this Final Order to all principals and managers of such business before engaging in such conduct.

D. Defendants must secure a signed and dated statement acknowledging receipt of the Final Order, within thirty (30) days of delivery, from all persons receiving a copy of the Final Order pursuant to this Section.

## X. Acknowledgment of Receipt of Order

IT IS FURTHER ORDERED that each Defendant, within five (5) business days of receipt of this Final Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Final Order.

## XI. Independence of Obligations

IT IS FURTHER ORDERED that each of the obligations imposed by this Final Order is independent of all other obligations under the Final Order, and

that the expiration of any requirements imposed by this Final Order shall not affect any other obligation arising under this Final Order.

### XII.  Costs and Attorneys Fees

IT IS FURTHER ORDERED that each party to this Final Order bear its own costs and attorneys fees incurred in connection with this action.

### XIII.  Continued Jurisdiction

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Final Order.

Dated: 25th of July, 2011

_____
Hon. George H. Wu
United States District Judge

Submitted by:

 /s/Chris M. Couillou
Chris M. Couillou, Esq.
ccouillou@ftc.gov
Counsel for the Plaintiff
Federal Trade Commission
225 Peachtree Street, Suite 1500
Atlanta, GA 30303
(404) 656-1353 (voice)
(404) 656-1379 (fax)